UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                          Case No. 14-31095-WRS
                                                               Chapter 7
PROFESSIONAL FACILITIES
MANAGEMENT INC.,

      Debtor

SUSAN SHIROCK DEPAOLA,

      Plaintiff                                         Adv. Pro. No. 15-3041-WRS

  v.

SLEEPY'S LLC,

      Defendant


## MEMORANDUM DECISION

This adversary proceeding is before the Court on Susan DePaola's motion to strike the jury demand of Sleepy's, LLC.[1] (Doc. 11). DePaola also seeks judgment on the pleadings as to two counts of a counterclaim filed by Sleepy's, LLC.[2] (Doc. 11). Sleepy's, LLC has filed an objection, asserting that its counterclaim is properly pled and that it has not waived its right to a

---

[1] Susan DePaola is the Plaintiff and Counterclaim Defendant in this adversary proceeding pursuant to her position as the Trustee in the underlying Chapter 7 bankruptcy case. See In re Prof'l Facilities Mgmt., Inc., Case No. 14-31095. Sleepy's, LLC is the Defendant and Counterclaim Plaintiff in this adversary proceeding.

[2] DePaola styled her motion as a motion to dismiss pursuant to Rule 12(b)(6). However, she filed an answer to the counterclaim prior to filing her motion to dismiss. (Doc. 10). Therefore, the Court will treat her motion as one for judgment on the pleadings. See FED. R. BANKR. P. 7012(b) (incorporating FED. R. CIV. P. 12(c)); cf. Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (characterizing a "motion for judgment on the pleadings" of a counterclaim as a motion for default judgment because the counterclaim defendant had not answered).

jury trial. (Doc. 18). For the reasons set forth below, DePaola's motion to strike the jury demand is GRANTED. DePaola's motion for judgment on the pleadings is GRANTED in part and DENIED in part.

## I. FACTS & PROCEDURAL HISTORY

Because this matter is before the Court on a motion for judgment on the pleadings as to a counterclaim, the Court assumes all facts pled in the counterclaim are true. The Court also assumes facts pled in the initial complaint and in the answer to the counterclaim are true, except to the extent they conflict with the counterclaim.

### A. The Facility Service Agreement

On April 23, 2012, Professional Facilities Management, Inc. ("PFMI") entered a "Facility Service Agreement ("FSA") with Sleepy's, LLC ("Sleepy's"), in which PFMI agreed to clean and service HVAC units and conduct preventative maintenance at roughly 800 retail mattress stores owned by Sleepy's. Pursuant to the FSA, Sleepy's agreed to pay PFMI an annual fee of $2,756,000, payable in equal monthly installments, for PFMI's services.

Sections 7.1e and 7.1f of the FSA provided that PFMI would indemnify Sleepy's for any costs or expenses arising out of property damage resulting from PFMI's performance of the contracted services or from a breach of PFMI's obligations under the FSA. The FSA also provided that New York law would apply to any claim or dispute arising out of the contract, and contained a clause selecting Nassau County, New York as the forum for dispute between the parties. PFMI and Sleepy's subsequently amended the FSA twice, but did not modify the relevant provisions.

2

### B. Bankruptcy

PFMI filed Chapter 11 bankruptcy on April 30, 2014. (Case No. 14-31095, Doc. 1). The Court converted PFMI's bankruptcy case to Chapter 7 on October 20, 2014, and appointed Susan DePaola ("DePaola") as trustee. (Case No. 14-31095, Docs. 196, 198). Sleepy's has not filed a proof of claim in PFMI's bankruptcy, and the bar date for claims was February 9, 2015. (Case No. 14-31095, Doc. 251).

### C. Adversary Proceeding

Acting in her capacity as trustee of PFMI's bankruptcy estate, DePaola initiated this proceeding on May 15, 2015 to collect an account receivable of $1,077,200.29 from Sleepy's. (Doc. 1). DePaola asserted counts of account stated, breach of contract, and quantum meruit for unpaid work allegedly performed by PFMI on behalf of Sleepy's. (Doc. 1). Sleepy's denied DePaola's claims, asserts various affirmative defenses and a counterclaim, and demands a jury trial. (Doc. 8). Sleepy's counterclaim asserts counts of breach of contract, indemnification, account stated, and quantum meruit, for damages Sleepy's allegedly sustained as a result of PFMI's failure to pay its subcontractors and failure to perform preventive maintenance on fixtures and equipment in Sleepy's stores. (Doc. 8). Sleepy's Fourth Affirmative Defense asserts "recoupment, set-off and indemnity." (Doc. 8). In its Fifteenth and Sixteenth Affirmative Defenses, Sleepy's indicates that it does not consent to a jury trial before this Court or to final adjudication by this Court. (Doc. 8). However, Sleepy's also asserts damages of $1,967,749.53 and expressly demands judgment for at least that amount. (Doc. 8). DePaola filed an answer admitting that Sleepy's counterclaim arises out of the same contract as her complaint (the FSA), but denying the substantive allegations of the counterclaim. (Doc. 10).

DePaola has moved to strike Sleepy's jury demand, and has moved for judgment on the pleadings on Sleepy's counterclaim as to the counts of account stated and quantum meruit.[3] (Doc. 11). She argues that Sleepy's waived its right to a jury trial by filing its counterclaim because the counterclaim acts as a proof of claim, and that Sleepy's has impliedly consented to final judgment in this Court by filing its counterclaim. She also argues that the account stated counterclaim fails because there is no agreement of the amount due between the parties, and that the quantum meruit counterclaim fails because Sleepy's provided no services to PFMI.

Sleepy's objects to DePaola's motion. (Doc. 18). Sleepy's argues that it did not waive its right to a jury trial by raising its counterclaim because its counterclaim was compulsory. It also argues that it has a claim for account stated because PFMI agreed to indemnify any damages resulting from PFMI's omissions or defective performance. Finally, Sleepy's argues that it has a claim for quantum meruit because quantum meruit incorporates unjust enrichment, and PFMI was unjustly enriched by Sleepy's payment for services that were not rendered. The parties have submitted additional briefs reiterating their arguments. (Docs. 24, 25).

## II. JURISDICTION & ADJUDICATORY POWER

### A. Jurisdiction

The Court has "related to" jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's General Order of Reference dated April 25, 1985.

---

[3] DePaola's motion does not challenge Sleepy's counts for breach of contract and indemnification in its counterclaim.

## B. This is a Non-Core Proceeding

Absent consent of the parties, a bankruptcy court may not enter final judgment in non-core proceedings. 28 U.S.C. § 157(c)(1); *see also* N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71-72 (1982). A bankruptcy court may enter final judgment in a core proceeding under 28 U.S.C. § 157(b)(1) so long as it involves the restructuring of debtor-creditor relations and not merely the augmentation of the bankruptcy estate. Stern v. Marshall, 131 S. Ct. 2594, 2614 (2010); *see also* N. Pipeline Constr. Co., 458 U.S. at 71; Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1951-54 (2015) (Roberts, C.J., dissenting). Congress has provided a non-exhaustive list of core proceedings under 28 U.S.C. § 157(b)(2), but "engrafted upon all of them is an overarching requirement that property of the estate under [11 U.S.C.] § 541 be involved." Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1348 (11th Cir. 1999). As the Eleventh Circuit has instructed:

> "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by a trustee to avoid a preference. If the proceeding is one that would only arise in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."

Toledo, 170 F.3d at 1348 (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987) (emphasis in original)).

DePaola asserted in her complaint that her claims were core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), and (O), and also asserts that Sleepy's counterclaim was a core proceeding.

5

(Docs. 1, 10). However, a trustee's claim to collect an account receivable is not in itself a matter concerning the administration of the estate, so § 157(b)(2)(A) is inapplicable. *See* Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993). Likewise, contractual claims are not claims to turn over property of the estate when the property is disputed, so § 157(b)(2)(E) is inapplicable. *See* Charter Crude Oil Co. v. Exxon Co. (In re Charter Co.), 913 F.2d 1575, 1579 (11th Cir. 1990). Nor do any of these claims fall within the catch-all provision of § 157(b)(2)(O) because, although they will determine who owes who and how much is owed, they "do[] not affect the contract[] that give[s] rise to their debtor-creditor relationship" and thus "do[] not 'adjust' the debtor-creditor relationship in any way." *See* Cmty. Bank of Homestead v. Boone (In re Boone), 52 F.3d 958, 961 n.2 (11th Cir. 1995) (per curiam); *cf.* N. Pipeline Constr. Co., 458 U.S. at 71-72. These are all state law claims that do not invoke a substantive right under the Bankruptcy Code and that could have proceeded in state court had there been no bankruptcy. *See* Toledo, 170 F.3d at 1348; Wood, 825 F.2d at 97. Therefore, they are non-core proceedings.

### C. Right to a Jury Trial

"If the right to a jury trial applies in a proceeding that may be heard under [28 U.S.C. § 157] by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). The district court, pursuant to its Order dated June 12, 1995, has designated to this Court the authority to conduct jury trials. However, Sleepy's does not consent to this Court conducting a jury trial over any claims or counterclaims to which the right to a jury trial attaches.

The Seventh Amendment provides:

> In Suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall otherwise be re-examined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII.

The Seventh Amendment generally preserves the right to trial by jury of legal claims, but not equitable claims, and contract-based claims and counterclaims seeking money damages are legal in nature. *See* Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989); N. Pipeline Constr. Co., 458 U.S. at 71-72. Moreover, the contractual claims asserted in this case are not facially asserting public rights; rather they assert claims "'of private right, that is, of the liability of one individual to another under the law as defined.'" N. Pipeline Constr. Co., 458 U.S. at 71-72 (quoting Crowell v. Benson, 285 U.S. 22, 51 (1932)). Thus, the right to a jury trial under the Seventh Amendment would normally attach to all claims and counterclaims in this case.

**D. Sleepy's Has Consented to Final Adjudication in this Court and Waived its Right to a Jury Trial**

Even when a proceeding is non-core, a bankruptcy court may adjudicate it if the parties expressly or implicitly consent. Wellness Int'l Network, Ltd., 135 S. Ct. at 1947-48 (majority opinion); 28 U.S.C. § 157(c)(2). However, such consent must "be knowing and voluntary." Wellness Int'l Network, 135 S. Ct. at 1948. "[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." Id. (quoting Roell v. Withrow, 538 U.S. 580, 590 (2003)). Likewise, a litigant holding a constitutional right to a jury trial waives that

7

right by invoking the bankruptcy court's equitable jurisdiction. Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990) (per curiam).

A creditor who files a proof of claim in a bankruptcy case submits to the bankruptcy court's equitable jurisdiction for determination not only of the claim itself, but also of any counterclaim or defense that must necessarily be resolved in the claims allowance process. Id.; Katchen v. Landy, 382 U.S. 323, 330, 334-35 (1966) (holding that a preference issue normally subject only to plenary jurisdiction under the 1898 Bankruptcy Act nevertheless fell under a bankruptcy referee's summary jurisdiction when a creditor filed a proof of claim and the trustee objected to the claim on the basis of a preferential transfer)[4]; *cf.* Stern, 131 S. Ct. at 2607-08, 2616-18 (holding that a creditor consented to bankruptcy court adjudication of his defamation claim by filing a proof of claim for it in bankruptcy, but did not consent to adjudication of the debtor's compulsory counterclaim for tortious interference with a gift because it would not necessarily be resolved by a determination of the proof of claim).

Langenkamp, Katchen, and Stern all dealt with the chronology in which a creditor first files a proof of claim against the bankruptcy estate and a trustee or debtor-in-possession subsequently objects to the claim or seeks other affirmative relief. However, the principles of consent to adjudication and waiver of the right to a jury trial have been extended to the opposite chronology: a trustee asserts a claim on behalf of the estate against a defendant who has not filed a proof of claim, and the defendant then asserts a counterclaim against the trustee in his or her representative capacity. Condrey v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.),

---

[4] Under both the 1898 Bankruptcy Act and the 1978 Bankruptcy Code, the bankruptcy court is required to disallow the claim of any entity who is a transferee of an avoidable preferential transfer. *See* 11 U.S.C. § 502(d).

8

425 B.R. 402, 409 (Bankr. S.D. Tex. 2010); Craig M. LaChance, *Counterclaim Against Bankruptcy Estate as Waiver of Right to Jury Trial*, 63 A.L.R. Fed. 2d 1, § 2 (2012).

Sleepy's clearly stated in its affirmative defenses that it did not consent to this Court's adjudication of any claims in the complaint or counterclaim, and Sleepy's demanded a jury trial that it did not consent to this Court presiding over. (Doc. 8). In spite of this, DePaola argues that Sleepy's consented to adjudication when it filed its counterclaim. (Docs. 11, 24). Sleepy's responds that its counterclaim was compulsory.[5] (Docs. 18, 25).

When determining whether a counterclaimant has invoked a bankruptcy court's equitable jurisdiction, the distinction between compulsory and permissive counterclaims is a red-herring. *Cf.* Stern, 131 S. Ct. at 2617 (compulsory nature of debtor's tortious interference counterclaim did not bring it within bankruptcy court's adjudicatory power because it could not be resolved by

---

[5] Whether Sleepy's counterclaim was compulsory or permissive is debatable. Civil Rule 13, as incorporated by Bankruptcy Rule 7013, provides that a counterclaim must be raised or waived if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim[,] and . . . does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1). All other counterclaims are permissive. FED. R. CIV. P. 13(b). However, the preface of Bankruptcy Rule 7013 provides an exception to its incorporation of Civil Rule 13 that applies here: "[A] party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property or the estate, unless the claim arose after the entry of an order for relief." FED. R. BANKR. P. 7013. Thus, a counterclaim that would normally be compulsory is permissive in the bankruptcy context when the counterclaimant is being sued by the trustee and the counterclaim arose pre-petition. Craig M. LaChance, *Counterclaims Against Bankruptcy Estate as Waiver of Right to Jury Trial*, 63 A.L.R. Fed. 2d 1, § 2 (2012).

The Third Circuit has held that a pre-petition counterclaim arising out of the same transaction as the original claim is compulsory, in spite of the language in Bankruptcy Rule 7013, if the bar date to file a proof of claim has run. *See* Beard v. Braunstein, 914 F.2d 434, 442 n.13 (3d Cir. 1990) (citing FED. R. BANKR. P. 3002(c), which requires a proof of claim to be filed in a Chapter 7 liquidation within 90 days after the first meeting of creditors is scheduled). The Court need not decide whether Sleepy's counterclaim is compulsory or permissive because it bases its holding on other grounds.

a determination of the creditor's defamation claim against the estate). "Regardless of the ultimate characterization of the counterclaim . . . the courts' chief concern has been whether the counterclaimant was seeking to achieve an affirmative recovery from the estate by circumventing the bankruptcy court's formal claims allowance procedure." Container Recycling Alliance v. Lassman, 359 B.R. 358, 362 (D. Mass. 2007); *see also* Styler v. Jean Bob, Inc. (In re Concept Clubs, Inc.), 154 B.R. 581, 589 (D. Utah 1993).

When a counterclaimant seeks no more than what the trustee seeks, there is a split of authority on whether a distinction between setoff and recoupment determines whether the counterclaimant has invoked the bankruptcy court's equitable jurisdiction. *Compare* United Structures of Am., Inc. v. G.R.G. Eng'g, S.E. (In re United Structures of Am., Inc.), 9 F.3d 996, 998-99 (1st Cir. 1993) (dicta explaining the importance of the distinction between setoff and recoupment in the Bankruptcy Code); Container Recycling Alliance, 359 B.R. at 363, 365 (holding that counterclaimant did not waive right to jury trial because counterclaim sounded in recoupment); Crum v. Blixseth (In re Big Springs Realty, LLC), 430 B.R. 629, 635 (Bankr. D. Mont. 2010) (holding that defendant asserting affirmative defenses waived right to jury trial because vagueness of defenses did not exclude possibility of setoff defense); *with* Concept Clubs, 154 B.R. at 586 (holding that neither recoupment nor setoff waives right to jury trial so long as amount counterclaimed is less than trustee's claim); Jobin v. Arnot (In re M & L Bus. Mach. Co.), 178 B.R. 270, 272 (Bankr. D. Colo. 1995) (same); Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin. Servs., Inc.), 251 B.R. 397, 405 (Bankr. N.D. Okla. 2007) (holding that both setoff and recoupment are secured claims against the estate, waiving right to a jury trial).

10

The Court need not weigh in on this split, however, because a counterclaim can only act as a non-waiver defense to a trustee's claim to the extent it negates that claim. When the counterclaim *exceeds* the trustee's claim, it becomes an affirmative claim against the bankruptcy estate. An action "raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial." Concept Clubs, 154 B.R. at 589; *see also* Container Recycling Alliance, 359 B.R. at 363 n.3 (noting that counterclaimant's renouncement of affirmative recovery was decisive in determining jury trial waiver issue); M & L Bus. Mach. Co., 178 B.R. at 272 ("If the defendants are indeed asking for monetary damages in addition to a reduction in the Trustee's claim, this would amount to a claim against the estate.").

Sleepy's demanded in its counterclaim nearly twice as much money as DePaola did in her complaint for damages stemming from PFMI's breach of the FSA. That is no mere recoupment defense. Sleepy's likely would not have waived its right to a jury trial had it limited its counterclaim to the amount DePaola demanded, or had included language indicating its intent to limit its demand in its pleadings, but it did not do so.

Counsel for Sleepy's asserted at a hearing on this issue that Sleepy's only sought to eliminate DePaola's right of recovery, not seek an affirmative claim against the estate, but Sleepy's written pleadings belie its counsel's assertion.[6] The prayer for relief in Sleepy's counterclaim expressly seeks an award of the larger amount from this Court. A litigant's written

---

[6] In ruling that a counterclaimant did not waive its right to a jury trial, the court in Container Recycling Alliance accepted an identical *post-factum* limitation from the counterclaimant under similar circumstances. 359 B.R. at 363 n.3-4. This Court declines to do so here.

pleadings will be taken over later assertions to the contrary.  *Cf.* Maddox v. Capital One, N.A. (In re Maddox), 530 B.R. 889, 893 (Bankr. M.D. Ala. 2015) (rejecting secured creditor's argument that it was only trying to collect its collateral by filing a proof of claim on a discharged debt because it had expressly reserved the right to seek a deficiency balance in the proof of claim).  If Sleepy's meant to merely negate DePaola's complaint with its counterclaim, it should have said so in the counterclaim.  There was no basis on which the Court could infer that Sleepy's intended to limit the amount of its counterclaim until after DePaola filed her motion to strike.  Having been caught with its hand in the cookie jar, Sleepy's cannot now be allowed to amend its pleadings in such a *post hoc* manner.

The fact that Sleepy's has not filed a proof of claim in PFMI's bankruptcy case, and that the bar date for filing claims has expired, does not undo Sleepy's waiver.  An affirmative claim against the bankruptcy estate is akin to filing a proof of claim.  While an untimely claim is less likely to be paid than a timely one, it is not outright barred from receiving a distribution.  *See* 11 U.S.C. § 726(a)(3).  The mere possibility that Sleepy's might receive a distribution on its untimely claim is sufficient to submit the claim to this Court's adjudication.

The Court also notes that a defendant sued by a bankruptcy trustee on non-core claims, who does not wish to litigate in bankruptcy court and who holds non-core compulsory counterclaims, has ways of objecting to bankruptcy court adjudication without filing those counterclaims in the bankruptcy court or waiving them.  If there is an applicable arbitration agreement, the defendant can move to compel arbitration.  *E.g.*, Harrelson v. Spray (In re Harrelson), 537 B.R. 16 (Bankr. M.D. Ala. 2015).  If the contract at issues contains a forum selection clause, as the FSA did in this case, the defendant may move to enforce it.  A defendant

12

may also file a motion requesting that the bankruptcy court abstain from hearing a proceeding to allow a state court to resolve it. Endeavour Highrise, 425 B.R. at 420-21; 28 U.S.C. § 1334(c). Certainly, a New York state court would be more familiar with New York contract law than an Alabama bankruptcy court would be. Finally, a defendant may file a motion with the district court to withdraw its reference from the bankruptcy court. 28 U.S.C. § 157(d). Sleepy's had all of these options except arbitration at its disposal, but chose not to exercise them.

In short, Sleepy's has consented to adjudication of its counterclaim (and, necessarily, DePaola's own claims since the counterclaim cannot be determined without determining them), and has waived its right to a jury trial.[7] The Court will grant DePaola's motion to strike Sleepy's jury demand.

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

As noted above, DePaola also moved for judgment on the pleadings as to the counts for an account stated and for quantum meruit in Sleepy's counterclaim. The parties agree that New York law applies.

#### A. Standard of Review

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c) (as incorporated by FED. R. BANKR. P.

---

[7] The Court notes that, independent of the waiver-by-counterclaim issue, Sleepy's also waived its right to a jury trial when it signed the FSA. Appendix B of the FSA provides "**EACH PARTY HEREBY WAIVES ANY RIGHT OR ENTITLEMENT TO A TRIAL BY JURY FOR ANY MATTER, LEGAL ACTION OR PROCEEDING WITH RESPECT TO OR ARISING OUT OF THIS AGREEMENT.**" (Doc. 18) (capitalization and emphasis in original).

13

Case 15-03041    Doc 26    Filed 10/27/15    Entered 10/27/15 14:21:48    Desc Main
Document      Page 13 of 19

7012(b)). Rule 12(c) "provides a means of disposing of cases when a judgment on the merits can be achieved by focusing on the content of the competing pleadings." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1336 (11th Cir. 2014) (internal quotation marks, ellipses, and emphasis omitted). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

"A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motion." Scottsdale Ins. Co. v. Ala. Mut. Ins. Co., 2012 WL 4477656, *3 (M.D. Ala. Sept. 28, 2012). "In determining whether a party is entitled to judgment on the pleadings," the Court must "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." Perez, 774 F.3d at 1335.

### B. Sleepy's Has Not Sufficiently Pled an Account Stated

DePaola argues that Sleepy's counterclaim for an account stated fails because there is no agreement of a definite amount due from PFMI to Sleepy's. (Doc. 24). Sleepy's responds that the FSA contains an indemnification section in which PFMI agreed to reimburse Sleepy's for any damages Sleepy's suffered due to PFMI's breach of the FSA. (Doc. 25).

Under New York law, a claim for an account stated "requires 'an agreement between the parties to an account based upon prior transactions between them. . . .'" LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (quoting Chisholm-Ryder Co. v.

14

Sommer & Sommer, 421 N.Y.S.2d 455, 457 (App. Div. 1979)). An "'account stated is an account balanced and rendered, with an assent to the balance express or implied; so that the demand is essentially the same as if a promissory note had been given for the balance[.]'" Interman Indus. Prods. v. R. S. M. Electron Power, 332 N.E.2d 859, 861 (N.Y. 1975) (quoting Volkening v. DeGraaf, 81 N.Y. 268, 270 (1880)).

The lone case DePaola cites for her position, Interman, is procedurally distinguishable from this case because it involved a motion for summary judgment pursuant to N.Y. C.P.L.R. § 3213. *See* id. That section permits a creditor owed money on an account stated to file a motion for summary judgment in lieu of a complaint when "the party to be charged has formally and explicitly acknowledged an indebtedness[,]" usually on a promissory note. Id. at 862. Here, Sleepy's does not seek summary judgment; rather, it merely seeks to survive DePaola's Rule 12(c) motion. It will do so if it has pled a factually and legally sufficient claim for an account stated. *See* Scottsdale Ins. Co., 2012 WL 4477656 at *3; *cf.* Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Nevertheless, and assuming *arguendo* that an account stated from Sleepy's to PFMI would be enforceable against DePaola in her representative capacity, DePaola's motion is due to be granted on this claim. There is no allegation in Sleepy's counterclaim that it ever rendered an account statement to PFMI, let alone that PFMI agreed to the indebtedness. "[T]he very meaning of an account stated is that the parties have come together and agreed upon the balance of

15

indebtedness, *insimul computassent*,[8] so that an action to recover the balance as upon an implied promise of payment may thenceforth be maintained[.]" Newburger-Morris Co. v. Talcott, 114 N.E.2d 846, 848 (N.Y. 1916) (Cardozo, J.) (footnote added) (citing Volkening, 81 N.Y. at 271). The Court cannot infer that PFMI impliedly consented to an account statement because Sleepy's has not alleged that it rendered one.

Sleepy's points to the indemnification agreement in the FSA as the basis for its account stated counterclaim. However, the indemnification agreement is nothing more than PFMI's conditional and open-ended promise that it would reimburse Sleepy's for any damages Sleepy's suffered in the event PFMI breached the FSA. It is not an agreement on PFMI's part that PFMI had actually done anything for which it would need to indemnify Sleepy's. Nor is it PFMI's agreement that the amount of damages Sleepy's claims is correct. *Cf. id.* (holding that "indefinite and general" monthly statements, for which the final balance due was unliquidated, were not an account stated). "An account stated claim requires ultimate proof of an agreement, express or implied, between the parties, because '[a]n essential element of an account stated is an agreement regarding the amount of the balance due.'" Meadowbrook-Richman, Inc. v. Assoc. Fin. Corp., 325 F. Supp. 2d 341, 360 (S.D.N.Y. 2004) (quoting Sisters of Charity Hosp. of Buffalo v. Riley, 661 N.Y.S.2d 352, 358 (App. Div. 1997)).

Sleepy's may well be entitled to every penny it demands. But there is nothing in its allegations from which the Court can infer that PFMI was in agreement. Sleepy's counterclaim for an account stated fails as a matter of law, and DePaola is entitled to judgment on this claim.

---

[8] "*Insimul computassent*" means "that the parties had reviewed their accounts and that the defendant voluntarily agreed to pay the amount sought by the plaintiff." BLACK'S LAW DICTIONARY 811 (8th ed. 2004).

### C. Sleepy's has Stated a Claim for Quasi-Contract or Unjust Enrichment

DePaola argues that she is entitled to judgment on Sleepy's counterclaim for quantum meruit because Sleepy's never provided any services to her or to PFMI. (Doc. 24). Sleepy's responds that it was forced to pay PFMI's subcontractors and hire third parties to perform the work that it had already hired PFMI to perform, and that PFMI was unjustly enriched as a result. (Docs. 11, 25).

"To establish a claim in quantum meruit, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services[.]" Caribbean Direct, Inc. v. Dubset, LLC, 954 N.Y.S.2d 66, 67 (App. Div. 2012).

"New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). That said, a litigant "can properly plead contradictory claims for breach of contract and for recovery under the theories of quantum meruit and unjust enrichment." Cyberchron Corp. v. Calldata Sys. Dev., Inc., 831 F. Supp. 94, 110 (E.D.N.Y. 1993), *vacated on other grounds*, 47 F.3d 39 (2d Cir. 1995). Sleepy's attached to its objection a document that appears to be a complete copy of the FSA and all subsequent amendments, fully signed by both Sleepy's and PFMI (Doc. 18); moreover, neither party appears to dispute the validity of the FSA. However, it is unclear from the pleadings whether Sleepy's damages arose entirely pre-petition or partially post-petition, and it is also unclear whether PFMI assumed or rejected the FSA when it filed bankruptcy. In addition, a dispute as to the validity of the FSA itself might arise as this litigation

17

proceeds. In light of these uncertainties, it would be premature to grant DePaola judgment on Sleepy's quantum meruit counterclaim based solely on the existence of the FSA. *Cf.* Cohen v. LTF Real Estate Co., 2009 WL 1373542, *5 (E.D.N.Y. May 15, 2009) (explaining that the plaintiff had adequately pled a plausible quantum meruit claim because the validity of the related contract was still disputed).

DePaola's argument that Sleepy's provided no services misses the mark. Although the elements of quantum meruit specifically use the word "services," quantum meruit has also been found where the claimant provides goods or property instead. Cyberchron Corp., 831 F. Supp. at 110 (citing, *e.g.*, Farash v. Sykes Datatronics, Inc., 452 N.E.2d 1245, 1248 (N.Y. 1983)). More importantly, New York law makes clear that quantum meruit and unjust enrichment may be analyzed together as a single quasi-contract claim. Mid-Hudson Catskill Rural Migrant Ministry, 418 F.3d at 175. To recover for unjust enrichment, a plaintiff must show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered[.]" Capin & Assoc., Inc. v. 599 W. 188th St., Inc., 2015 N.Y. Misc. LEXIS 821, *14 (N.Y. Sup. Ct. Mar. 12, 2015). Sleepy's alleges in its counterclaim that it paid PFMI money for services that PFMI promised to provide but did not, forcing Sleepy's to seek performance elsewhere. Sleepy's also alleges that it paid PFMI's subcontractors when PFMI was obligated to pay them. That states a claim for unjust enrichment.

Sleepy's characterization of its quasi-contract claim as one for "quantum meruit" is admittedly misleading, but a court "should not be distracted by the manner in which a theory of recovery is titled." Farash, 452 N.E.2d at 1248. Sleepy's has adequately pled a quasi-contract

18

Case 15-03041 Doc 26 Filed 10/27/15 Entered 10/27/15 14:21:48 Desc Main
Document Page 18 of 19

counterclaim for unjust enrichment, and the Court will deny DePaola's motion for judgment on the pleadings on this count.

### IV. CONCLUSION

All of the claims and counterclaims alleged by DePaola and Sleepy's in this case are non-core proceedings to which the right to a jury trial would normally attach. However, Sleepy's consented to final adjudication by this Court, and waived its right to a jury trial, by filing a counterclaim against the bankruptcy estate for an amount in excess of that which DePaola claims. Therefore, DePaola's motion to strike Sleepy's jury demand is granted.

Sleepy's failed to allege that it ever rendered an account statement to PFMI, or that PFMI ever agreed to such an account, but Sleepy's has stated a claim for unjust enrichment. Therefore, DePaola's motion for judgment on the pleadings is granted as to the account stated counterclaim, but denied as to the quantum meruit counterclaim.

A separate order consistent with this opinion will be entered.

Done this 27th day of October, 2015.

United States Bankruptcy Judge

c: R. Scott Williams, Attorney for Plaintiff
   John L. Murphy, Attorney for Defendant
   Gerard S. Catalanello, Attorney for Defendant